AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

United States of America
v.
Linara Mukhamedzhanova

*Defendant(s)*

Case No. 8:16MJ1746 MAP

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of beginning in or around 2015 in the county of Hillsborough in the Middle District of Florida, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1344, and 18 U.S.C. § 1028A | Bank fraud and aggravated identity theft |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

[signature]
*Complainant's signature*

Jason Failing, Special Agent IRS-CI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/15/16

[signature]
*Judge's signature*

City and state: Tampa, Florida

Mark A. Pizzo, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Jason Failing, Special Agent with the Internal Revenue Service – Criminal Investigation (IRS-CI), (hereinafter the "affiant") being duly sworn, depose and state as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

1. I have been a Special Agent with the IRS-CI since March 2010. I am currently assigned to the Cyber Crimes Unit of IRS-CI, have received training in criminal schemes perpetrated via the internet, and I hold a Global Information Assurance Certification of Information Security Fundamentals. I have a Bachelor's degree in Economics and Management from Hope College in Holland, Michigan and sixteen months private sector experience as an accountant. On September 10, 2010, I successfully completed training at the Federal Law Enforcement Training Center (FLETC), located in Glynco, Georgia. I attended approximately twenty-six (26) weeks of special agent training in various aspects of criminal investigation dealing specifically with criminal law, criminal tax law, money laundering, wire fraud, search and seizure warrants, and various financial investigative techniques. My duties as a special agent include the criminal investigation of Title 26 tax violations, Title 31 Bank Secrecy Act violations, and Title 18 money laundering violations of the United States Code. As an IRS-CI special agent, I have been the affiant for and participated in the execution of multiple arrest, search, and seizure warrants.

2. I make this affidavit in support of a criminal complaint charging Linara Mukhamedzhanova (hereafter "Mukhamedzhanova") with bank fraud, in violation of Title 18, United States Code, Section 1344, and aggravated identity theft, in violation of Title 18, United States Code, Section 1028A. This affidavit is also submitted in support of an arrest warrant for Mukhamedzhanova.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## II. TARGET SUBJECT AND OFFENSES

4. Based on the investigation in this case, as set forth below, there is probable cause to believe that Mukhamedzhanova, and other known and unknown individuals, have participated in a sophisticated, large-scale scheme to file fraudulent Federal Income Tax Returns based on stolen personally identifiable information (PII) and to receive, disguise, and distribute the resulting fraudulent tax refunds through accounts established at federally insured financial institutions.

5. The following persons and others are described herein in relation to the commission of the Subject Offenses:

a. Mukhamedzhanova is a Caucasian female, who is approximately 23 years old. Mukhamedzhanova was born in Russia and is a Russian citizen. Mukhamedzhanova currently resides in the United States

under a J1 visa (student) that expires on or about February 1, 2017. Mukhamedzhanova's current employment is not known, but according to records with the IRS, she previously worked for Global Food Mart. Mukhamedzhanova and N.R. appear to be involved in a romantic relationship and co-habitate.

b. N.R. is a Caucasian male, who is approximately 34 years old. His current employment is unknown per IDRS (internal IRS tax database); however, N.R. listed My Mechanic as his employer when arrested by the City of Venice Police Department on or about September 30, 2015. N.R. was born in Russia and is a Russian citizen. N.R. currently resides in the United States under a B2 visa (tourist) that expires on or about February 1, 2017.

c. A.P. is a Caucasian male, who is approximately 31 years old. His current employment is unknown. A.P. was born in Russia and is a Russian citizen. A.P. entered the United States on a short-term, non-immigrant visa.

d. K.V. is a Caucasian male, who is approximately 33 years old. His current employment is unknown. K.V. was born in Russia and is a Russian citizen. K.V.'s B1/B2 visa expired on or about August 14, 2016. As a foreigner, K.V. has no personal tax filing history.

e. G.M. is a Caucasian male who is approximately 29 years old. G.M. is a Russian citizen. G.M. was arrested by the Charlotte County (Florida) Sherriff's Office (CCSO) on or about August 17, 2016, and was charged with grand theft of property more than $300 but less than $5,000, and criminal use of personal identification without consent. Your affiant believes that G.M. resides with Mukhamedzhanova and N.R. at 8004 Boca Grande Avenue, North Port, Florida 34287.

f. P.S.'s Florida Driver's License lists his home address as 4227 Calatrava Avenue, North Port, Florida and an age of approximately 38. His current employment is with US Motorsports LLC, of which he is the registered owner. P.S. was born in Moldova and is a United States citizen.

g. A.S. is a Caucasian female, who is approximately 29 years old. She resides in the Miami, Florida area with A.P. Based on surveillance, A.S. appears to work at Voodoo Rooftop Lounge and Hookah, a bar and lounge in the Miami Beach area. A.S. was born in Russia and is a Russian citizen. A.S. entered the United States on a short term, non-immigrant visa. A.S. appears to be in a romantic relationship with A.P and they co-habitate. A.P. and A.S. have a young daughter together.

h. Sergey Kovalenko (hereafter "Kovalenko") is a Caucasian male, who is approximately 27 years old. He lives in the Virginia Beach, Virginia

area. His most recent employment is unknown but during 2014, he was a subcontractor for Master Cleaning Services, located in Virginia Beach. Kovalenko was born in Kazakhstan and is a Russian citizen. Kovalenko entered the United States on a short-term, non-immigrant visa. Kovalenko was charged in the Eastern District of Virginia, case 2:16-mj-00122, with unauthorized use of access devices, in violation of Title 18, United States Code, Section 1029(a)(2), false representation of a social security account number, in violation of Title 42, United States Code, Section 408(a)(7)(B), aggravated identity theft, in violation of Title 18, United States Code, Section 1028A(a)(1), and bank fraud, in violation of Title 18, United States Code, Section 1344.

i. Laziz Eraliyev (hereafter "Eraliyev") is a Caucasian male, who is approximately 27 years old. He lives in the Virginia Beach area. His most recent employment is unknown but during 2014, he was a subcontractor for Master Cleaning Services. Eraliyev was born in Kazakhstan and is a Kazakhstan citizen. Eraliyev entered the United States on a short-term, non-immigrant visa. Eraliyev was charged in the Eastern District of Virginia, case 2:16-mj-00123, with unauthorized use of access devices, in violation of Title 18, United States Code, Section 1029(a)(2), false representation of a social security account number, in violation of Title 42, United States Code, Section

408(a)(7)(B), aggravated identity theft, in violation of Title 18, United States Code, Section 1028A(a)(1), and bank fraud, in violation of Title 18, United States Code, Section 1344.

## III. PROBABLE CAUSE

### A. Background

6. IRS-CI, the Federal Bureau of Investigation (FBI), the U.S. Treasury Inspector General for Tax Administration (TIGTA), and the Federal Deposit Insurance Corporation, Office of Inspector General (FDCI-OIG) have been investigating a sophisticated, large scale money laundering, identity theft, tax fraud, and bank fraud scheme beginning in or around 2015. This scheme appears to have utilized various services, to include money laundering services, that were previously established and operating before this particular scheme occurred.

7. In this scheme, unauthorized individuals stole genuine taxpayers' identities and filed false tax returns, which caused the IRS to issue refunds to the subjects and their co-conspirators. The perpetrators directed those refund deposits to multiple bank accounts and other financial accounts that were under their control or under the control of co-conspirators. Many of these accounts had been opened in the names of individuals from Kazakhstan and other Eastern European and Central Asian countries. Many of these individuals had previously come to the United States on short-term, non-immigrant work visas. In order to gain access to the fraudulent tax refunds and other stolen monies deposited into the bank accounts, the subjects

and their co-conspirators withdrew cash from banks and multiple Automated Teller Machines (ATMs) in Virginia, Florida, and elsewhere.

B. Kovalenko and Eraliyev

8. On or about March 8, 2016, Kovalenko and Eraliyev were arrested in Virginia Beach, Virginia and their residences were searched. Kovalenko and Eraliyev were arrested on criminal complaints for violations of 18 U.S.C. § 1029 (Unauthorized Use of Access Devices), 42 U.S.C. § 408(a)(7)(B) (False Representation of a Social Security Account Number), U.S.C. § 1028A (Aggravated Identity Theft), and 18 U.S.C. § 1344 (Bank Fraud) for their participation in the SIRF scheme described herein.

9. For example, Kovalenko obtained bank accounts opened in the names of stolen identities and directed individuals who were visiting the U.S. on short-term, non-immigrant visas from Kazakhstan and other Eastern European countries to open bank accounts and turn control of those accounts over to Kovalenko. Kovalenko then used these accounts to receive and further transfer stolen money to include fraudulently obtained tax refund money.

10. Eraliyev controlled bank accounts in the name of an individual who once visited the U.S. on short-term, non-immigrant visa. This individual was from an Eastern European country. Eraliyev then used these accounts to receive, withdraw, and further transfer stolen money to include fraudulently obtained tax refund money.

11. During post-*Miranda* interviews, Kovalenko and Eraliyev identified A.P. as

the individual who recruited them into the scheme of obtaining and managing bank accounts to receive and further transfer stolen money. A.P. told Kovalenko that the money Kovalenko was handling was either for A.P.'s friend or were the tax refunds for J1 workers who no longer are in the United States after working here.

12. According to Eraliyev, A.P. provided Eraliyev with a driver's license that included Eraliyev's picture, but listed the PII of an individual from an Eastern European country who once visited the U.S. on a short-term, non-immigrant visa. Eraliyev subsequently used this driver's license to open bank accounts at federally insured financial institutions and, as directed by A.P., subsequently received a majority of his instructions from Kovalenko. Once the bank accounts were open, Kovalenko notified Eraliyev when money arrived in the account and Eraliyev would withdraw the funds. Eraliyev told agents that he kept approximately ten percent of the funds and gave the rest to Kovalenko.

13. According to Kovalenko, at A.P.'s direction, Kovalenko paid individuals who were visiting the U.S. on short-term, non-immigrant visas to establish bank accounts and give Kovalenko the debit cards and online banking information associated with those accounts. Kovalenko would provide the bank routing and account numbers to A.P. and A.P. would notify Kovalenko when money was deposited into these accounts. Kovalenko would then withdraw the money via automated teller machines (ATMs) in Virginia. In many instances, this money was either given to A.P. or sent to other individuals, in some cases overseas, at the direction of A.P.

14. Eraliyev identified Mukhamedzhanova and N.R. in bank ATM photos. Eraliyev told agents that Mukhamedzhanova and N.R. were close associates of A.P. Kovalenko knew Mukhamedzhanova and N.R. socially from being around A.P.

C. Mukhamedzhanova and N.R.'s Addresses and Cell Phone Numbers

15. Mukhamedzhanova and N.R. currently reside at 8004 Boca Grande Avenue, North Port, Florida, in Sarasota County in the Middle District of Florida. On or about October 17, 2016, Agents observed a male and female who matched the description of Mukhamedzhanova and N.R. in front of and depart from 8004 Boca Grande Avenue and observed vehicles known to be driven by them at or around the property. Also on or about October 17, 2016, agents collected the trash from 8004 Bocca Grande Avenue. Agents recovered a copy of lease from 901 Eleuthera West, Venice, Florida dated on or about May 10, 2016, that was signed by Mukhamedzhanova and N.R. Agents also found multiple bank statements addressed to N.R. and Mukhamedzhanova as well as court dates for N.R.

16. During 2015, N.R. and Mukhamedzhanova resided at 901 Eleuthera Street West, Venice, Florida. They also used N.R.'s family's address of 17201 Collins Ave Apt 2103, Sunny Isles Beach, Florida near Miami.

17. Mukhamedzhanova maintains a Sprint cell phone account, ending in 5657, to which is assigned two different cellular telephone phone numbers: 321-277-8249 and 301-828-7523. The current mailing address on the Sprint account is N.R.'s parents' residence, 17201 Collins Avenue, Apt 2103, Sunny Isles Beach, Florida. It is

believed that N.R. and Mukhamedzhanova use the cell phones assigned with these numbers interchangeably. Phone numbers 321-277-8249 and 301-828-7523 pinged off a cell tower close to 17201 Collins Avenue approximately 110 times and approximately 2,097 times off a cell tower close to 901 Eleuthera Street West. The pings were often around the beginning and/or the end of the day. The phone pings less than a mile from 901 Eleuthera Street West started on or about February 10, 2015, through and including on or about April 11, 2016.

18. On or about April 23, 2016, N.R. listed 321-277-8249 as his phone number when he opened Wells Fargo bank accounts ending in -4403 and -7464. On or about April 23, 2016, Mukhamedzhanova listed 301-828-7523 as her phone number when she opened a Wells Fargo bank account ending in- 4341 with N.R.

D. Victim D.Z.

19. On or about March 21, 2015, a fraudulent tax refund was submitted to the IRS in the name of victim D.Z. The fraudulent return for victim D.Z. listed D.Z.'s filing status as single and claimed a standard deduction. The fraudulent return claimed a refund of $4,958.00 that was directed by the filer to a Green Dot account.

20. On or about October 18, 2016, investigators interviewed victim D.Z. of Wisconsin. Victim D.Z. stated that he/she did not file a Form 1040EZ for the 2014 tax year. Victim D.Z. also stated that he/she was married during that tax year and would have filed a joint tax return with itemized deductions if he/she had filed. Victim D.Z. stated the tax return filed with his/her PII was false and filed without

his/her permission. Victim D.Z. did not receive the proceeds from the tax return nor did he/she request a tax refund be deposited to a Green Dot account.

E. Wells Fargo Bank Account Ending 4682

21. On or about February 13, 2015, Mukhamedzhanova opened, and was the sole account owner of, a Wells Fargo checking account ending in -4682, in South Venice Florida. The account was funded by cash deposits and there is evidence of retail expenses. There are no paychecks or direct deposits indicative of employment. Wells Fargo is a federally insured financial institution.

F. BB&T Bank Account Ending in -2463

22. On or about May 5, 2015, five FiServ[1] checks were issued from D.Z.'s GreenDot account, funded by the fraudulently-obtained tax refund described above, to payee K.V. These five checks totaled approximately $4,952.00 and were directed by the individual(s) controlling D.Z.'s GreenDot account to be mailed to 901 Eleuthera Street West, Venice, Florida. This was N.R. and Mukhamedzhanova's address at the time. When interviewed, agents asked victim D.Z. if he/she knew of K.V. and D.Z. responded that he/she did not.

23. The five FiServe checks resulting from the fraudulent tax refund issued to D.Z. were deposited into a BB&T bank account ending in -2463 and then Mukhamedzhanova, and possibly others, used and attempted to use the funds from

[1] One of the services Green Dot offers is a bill-pay system that allows an account holder to access their account online and direct paper checks drawn on the account holder's Green Dot account be mailed to a third party in lieu of the account holder physically writing and mailing a check from a traditional checking account. Green Dot has contracted with FiServ to provide this service.

the account. BB&T is a federally insured financial institution.

24. On or about May 19, 2015, BB&T bank account ending in -2463 was opened by an individual claiming to be K.V. with a deposit of $995.00 from a victim D.Z. FiServ check. No debits were charged to the account before K.V. departed the United States on or about May 20, 2015. The five FiServ checks from a Green Dot account in Victim D.Z.'s name totaling $4,952.00 were deposited into the BB&T bank account on or about May 19, May 26, and May 28, 2015.

25. On or about May 26, 2015, phone number (321) 277-8249, which is registered to Mukhamedzhanova and used by both her and N.R., called BB&T's customer service. Approximately two minutes later, this same phone received a call from 786-260-4086, which investigators believe to be N.R.'s cell phone. Then, according to bank security photos, later on the same day, a woman resembling Mukhamedzhanova approached a BB&T branch ATM in Venice, Florida while accompanied by a man resembling N.R. Mukhamedzhanova attempted to withdraw $500.00 from the ATM but was unsuccessful. She then conducted a balance inquiry, deposited $20.00 in cash, and deposited a $998.00 FiServ check from Victim D.Z. During this time, the cell phone assigned number (321) 277-8249 pinged a cell tower less than one mile away from this ATM. During a post-*Miranda* interview, Eraliyev identified Mukhamedzhanova and N.R. as the individuals in the aforementioned bank security photos. Shortly after these ATM transactions, phone (321) 277-8249

placed an approximately eighty second phone call to 786-493-4248, a phone number used by A.P.[2]

26. On or about May 27, 2015, phone number (321) 277-8249 called 786-260-4086, believed to be used by N.R. Shortly after this phone call, BB&T Bank account ending in -2463 was accessed online for the first time, from Comcast Internet Protocol (IP) address 73.55.74.135. At or about this time, phone (321) 277-8249 pinged a cell phone tower less than two miles from 4227 Calatrava Ave. The IP address was registered to 4227 Calatrava Ave and P.S. from June 7, 2015 forward.[3] On or about May 26, 2015, this IP address also accessed N.R.'s Sun Pass (Florida's highway toll payment system). On or about June 18, 2016, this same IP address accessed N.R.'s rusinnik82@gmail.com email account. Later in the afternoon on or about May 27, 2015, the BB&T debit card was used for two purchases at Panera Bread in North Port, Florida.

27. On or about May 28, 2015, a debit card purchase was unsuccessfully attempted at Wal-Mart in Englewood, Florida. A short time later, the BB&T online bank account was accessed from IP address 166.172.191.205. This IP address was registered to AT&T Wireless in Florida.[4] This same IP address also accessed Mukhamedzhanova's Wells Fargo bank account ending in -4682 online

[2] Auto mechanic records for A.P.'s vehicle from in or around January 2016 list 786-493-4248 as a contact number for A.P.

[3] Comcast only retains IP Address records for 180 days; June 7, 2015 was the earliest date available at the time legal process was served.

[4] Cell phone IP addresses are shared among many subscribers and are ever-changing since they typically last only as long as the session, therefore it is difficult and rare to attribute the access to a specific user.

approximately seven times on or about May 29, 2015. Shortly after the BB&T online account access, Mukhamedzhanova made a deposit of $50.00 cash and three FiServ checks from Victim D.Z. totaling $2,959.00 into the BB&T account at an ATM in Venice, Florida and followed the deposit with a balance inquiry. The deposit was conducted at the same location as the transaction conducted on or about May 26, 2015. In ATM security footage, Mukhamedzhanova appeared to wear the same Armani t-shirt during both transactions. Mukhamedzhanova and N.R. had eight phone calls with each other during that day, including one approximately 90 minutes after Mukhamedzhanova conducted the deposit. Also on or about the same date, Mukhamedzhanova or N.R. attempted to make a purchase at Wal-Mart, which was unsuccessful. Then Mukhamedzhanova, N.R., or an associate checked the account online before Mukhamedzhanova conducted the ATM deposits to fund future purchases.

28. On or about May 29, 2015, BB&T froze the debit card for the account ending in -2463 due to suspected fraudulent activity. The balance of the account was approximately $4,953.95.

29. On or about May 31, 2015 at 00:03, IP address 66.87.122.30 was used to gain online access to the BB&T bank account ending in -2463. The IP address was registered at that time to Sprint PCS in Florida. It should be noted that Mukhamedzhanova's two cellular smart phones were registered to Sprint at the same time. At approximately 00:11, ATM surveillance images showed

Mukhamedzhanova attempt to make a withdrawal and make balance inquiry from a BB&T ATM in Venice, Florida. Minutes later, an individual unsuccessfully attempted to make a debit card purchase at a Shell Service Station in Venice, Florida. Then phone number 321-277-8249 called 786-260-4086. Later in the day, phone number (321) 277-8249 called (301) 828-7523. Shortly after the call, a Sprint IP address out of Florida accessed K.V.'s BB&T bank account ending in -4682 online. This was followed by a call from (321) 277-8249 to BB&T customer service.

30. On or about June 2, 2015, there was an unsuccessful balance inquiry attempt on K.V.'s BB&T bank account ending in -2463 in Venice, Florida. Immediately after, phone number (301) 828-7523 called (321) 277-8249. The (301) 828-7523 phone pinged a cell tower near a BB&T bank branch in Venice, Florida.

31. On or about June 3, 2015, bank surveillance photos showed Mukhamedzhanova making a counter deposit of approximately $120.00 in cash into K.V.'s BB&T account ending in -2463 at a BB&T branch in Venice, Florida. Immediately after, phone number (301) 828-7523 called (321) 277-8249. The (301) 828-7523 phone pinged a cell tower near a BB&T bank branch in Venice, Florida.

32. On or about June 4, 2015, IP address 66.87.148.133 belonging to Sprint out of Florida accessed K.V.'s BB&T bank account online. On or about June 5, 2015, the same IP address accessed Mukhamedzhanova's Wells Fargo account online.

33. On or about June 21, 2015, phone number (321) 277-8249 called A.P. at (786) 493-4248 approximately three times with call durations of less than 17 seconds each.

During the time period of these calls, there was an unsuccessful balance inquiry attempt of K.V.'s BB&T bank account at an ATM in Sunny Isles Beach, Florida. About this time, both (301) 828-4523 and (321) 277-8249 pinged towers in the Sunny Isles Beach area. Shortly after the unsuccessful balance inquiry, A.P. called (321) 277-8249.

34. On or about June 25, 2015, an unknown male called BB&T and inquired why "his" card was being declined. The internal bank notes stated the caller could not verify recent transactions. The caller placed the bank employee on hold to locate the information but the unknown caller ultimately disconnected. Phone records for this date disclose several phone calls between: (321) 277-8249, (301) 828-7523, and (786) 260-4086, appearing to coordinate efforts to thwart bank protocols. One call with A.P. lasted over seven minutes. Also on or about June 25, 2015, phone number (301) 828-7523 called a phone known to investigators to be used by Kovalenko's wife, (757) 985-9515. The phone (757) 985-9515 pinged off a cell tower near Kovalenko's residence at the time of the call in Virginia Beach, Virginia.

G. Mukhamedzhanova and N.R.'s Relationship

35. Based on a review of social media and an interview of Eraliyev, Mukhamedzhanova and N.R. appear to be in a relationship. Surveillance has shown that they cohabitate at their current residence, 8004 Boca Grande Avenue. They both maintain Instagram social media accounts. Both Instagram accounts have photos of Mukhamedzhanova and N.R. together and some photos are posted to both

accounts. Based on these photos, it would appear N.R. and Mukhamedzhanova have been in a relationship since at least 2014. N.R. listed his first name with Instagram as "Nick & Lina" and a verified phone number of (321) 277-8249. N.R.'s Instagram account listed the email address of Rusinnik82@gmail.com. Rusinnik82@gmail.com also listed the phone number of (321) 277-8249 with Google.

H. Mukhamedzhanova, N.R., Eraliyev, Kovalenko, and A.P.

36. A review of social media shows Mukhamedzhanova, N.R., A.P., and A.S. have likely known each other socially since at least in or around 2014. A review of social media accounts used by Mukhamedzhanova and N.R. show photographs of them together with A.P., and following users believed to be A.P. and A.S.

37. A.P. and A.S. currently reside in the Aventura, Florida area in a high rise residential building. All visitors are supposed to check in with the front desk and their name and photograph are recorded. A review of A.P. and A.S.'s visitors log shows that Mukhamedzhanova visited them on or about March 19, 2016, March 12, 2016, and January 10, 2016.

38. A review of the electronic devices seized during the March 2016 search warrant of Kovalenko's residence shows various chats logs between and involving A.P., A.S., Kovalenko, Eraliyev, N.R., Mukhamedzhanova, and Kovalenko's wife, M.M. For example, a chat exchange between phone numbers 305-713-3505, believed to belong to N.R., and 786-539-8770, believed to belong to M.M., shows a

photo of N.R. and A.P. in a social setting and a photo of Mukhamedzhanova and A.P. in a social setting.

39. A review of the electronic devices seized during the March 2016 search warrant of Eraliyev's residence shows a chat log involving Kovalenko, Eraliyev and N.R. For example, a chat exchange between phone numbers 757-761-1581, a number used by Eraliyev, and 7-702-643-3434, believed to be a Kazakhstan cell phone, shows a photo of N.R. and Eraliyev in a social setting and various photos of Eraliyev and Kovalenko together.

40. Phone number (321) 277-8249 called or texted Kovalenko's phone in Virginia Beach, Virginia six times. Kovalenko and K.V. are also connected to Mukhamedzhanova and N.R.'s previously used address of 17201 Collins Avenue. Kovalenko listed 17201 Collins Avenue on his application for asylum in the United States. K.V. used the 17201 Collins Avenue address multiple times when entering the United States. On or about April 25, 2015, K.V. travelled inbound from Vnukovo airport in Russia to Miami noting he was visiting the address of 17201 Collins Ave.

I. Mail Forwarding

41. The investigation has revealed that, as part of the larger, sophisticated tax refund fraud scheme, fraudulent change of address requests[5] were submitted to the

[5] An address's mail can be forwarded by submitting a request through the United State Postal Service's (USPS) website. Mail can be forwarded for as short as 15 days or as long as one year with "a few clicks and a $1.00 charge to your credit card" to verify the identity.

United States Postal Service (USPS) in order to divert, among other items, fraudulently obtained American Express pre-paid debit cards. For example, in or around early 2015, the United States Postal Inspection Service (USPIS) received numerous complaints from individuals who were not receiving their mail for an extended period of time. Upon further investigation, the USPIS determined that fraudulent change of address requests had been submitted to the USPS on behalf of these individuals. The USPIS was able to intercept certain instances of the forwarded mail and noted that a majority included American Express pre-paid debit cards. Investigators recovered from this batch of intercepted mail American Express pre-paid debit cards destined for the following six addresses in the North Port and Venice, Florida areas: 901 Eleuthera West; 902 Eleuthera West; 2727 Cherokee Street; 1236 N San Mateo Drive; 3073 S Haberland Boulevard; and 7971 Evinrude Avenue. All of these addresses are located in either Venice or North Port, Florida near, and in some cases next door to, N.R. and Mukhamedzhanova's residence.

42. Upon further investigation, USPIS discovered approximately 212 mail forwarding victims that had their mail temporarily forwarded to these six addresses in the North Port and Venice, Florida areas from on or about April 10, 2015, through and including on or about May 23, 2015:

| Address | Mail Forwarding Victims |
|---|---|
| 901 & 902 Eleuthera W, Venice, Florida | 69 |
| 2727 Cherokee St, North Port, Florida | 57 |
| 1236 N San Mateo Dr, North Port, Florida | 31 |
| 3073 S Haberland Blvd, North Port, Florida | 30 |
| 7971 Evinrude Ave, North Port, Florida | 25 |
| | **212** |

For these same victims of mail forwarding, the IRS received approximately 162 suspected false federal income tax returns for the 2014 tax year, claiming approximately $484,177 in refunds. The investigation to date shows approximately 47 of these victims had a fraudulent return filed using their stolen PII that matches the scheme described herein, claiming refunds totaling approximately $159,268.00.

43. Mail for approximately 69 victims describe above was forwarded to 901 and 902 Eleuthera Street West. The mailboxes for 901 and 902 Eleuthera Street West share the same post and are located next to each other providing an opportunity to indiscreetly remove mail from one mailbox while checking the other.

44. Investigators learned that the residents at 2727 Cherokee Street also received five FiServ checks issued to K.V. from a Green Dot account totaling approximately totaling $4,957.00. The residence at 2727 Cherokee Street is owned by P.M., who also owns 1236 North San Mateo Drive; 3073 South Haberland Boulevard; and 7971 Evinrude Avenue. Approximately 31, 30, and 25 mail forwarding victims had their mail temporarily forwarded to these addresses, respectively.

J. Flight Risk

45. Mukhamedzhanova is a flight risk. She is a Russian citizen and her visa expires in or around February 2017. According to social media, Mukhamedzhanova and N.R. maintain connections with foreign citizens and appear to speak fluent Russian. N.R.'s family also appears to have the financial means to facilitate flight. N.R.'s mother, S.R., is the owner of 17201 Collins Avenue, Apartment 2103. The ocean front apartment was purchased in or around 2011, for approximately $760,000.00 and currently has an assessed value of approximately $1 million with no recorded mortgage.

46. N.R., Mukhamedzhanova, and N.R.'s family have engaged in large dollar, international financial transactions during the recent past, including but not limited to the following:

a. N.R.'s parents, I.R. and S.R., both Russian citizens and residents at 17201 Collins Avenue, Apartment 2103, owned a combined total of five Wells Fargo bank accounts. The accounts were solely owned with each other as their beneficiary but not cosigner. From on or about August 3, 2011, to on or about October 3, 2012, these Wells Fargo accounts received approximately 238 wire transfers from Russian bank VTB Bank account ending in 0677 totaling approximately $1,182,985. All but three of the wires were in denominations of approximately

$5,000.00. The originators of the wires included I.R., S.R., N.R, N.R.'s brother, S.R2., and K.V., all of whom are described herein. Debits from these accounts include:

i. A cashier's check to Lexus of North Miami for approximately $64,510.62;

ii. A check to Bentley of Ft Lauderdale for approximately $25,000.00;

iii. A wire transfer for approximately $212,727.18 to Holman Automotive Group Inc[6];

iv. A check for approximately $265,000.00 written by I.R. to The Law Office of Robert Abramson noting "deposit for unit 2908".

b. From on or about April 17, 2013, to on or about May 31, 2013, one of I.R.'s Wells Fargo accounts received approximately 217 wire transfers totaling approximately $1,085,000.00 from VTB Bank in Russia. The wires were all in denominations of approximately $5,000.00. The originators of the wires were N.K., S.R., S.R2., K.V., and G., P., and V.A.P. Each of the seven individuals sent approximately 31 wires totaling approximately $155,000.00 each with wire references of "gift for rezident"[sic].

[6] Holman Automotive Group Inc. owns multiple car dealerships in Florida, Pennsylvania, and New Jersey, including luxury brands and Bentley Ft Lauderdale.

c. From on or about June 3, 2013, to on or about June 26, 2013, one of I.R.'s Wells Fargo accounts received approximately119 wire transfers totaling approximately $590,170.00 from VTB Bank in Russia. The wires were all in denominations of approximately $4,550.00, $4,760.00, or $5,000.00. The originators of the wires were N.K., S.R., S.R2., K.V., and G., P., and V. A.P. Each of the seven individuals sent approximately 17 wires totaling approximately $84,310.00 each with wire references of "gift for rezident"[sic].

d. Between on or about August 2, 2013 and on or about September 17, 2013, deposits were made into N.R.'s Wells Fargo account ending in 0135 by unknown third parties in Virginia, Florida, and New York ranging from approximately $1,500 to $10,000 each and totaling approximately $52,865.00. The deposits were followed by seven cash withdrawals totaling approximately $24,200.00 conducted in New York, Illinois, and Florida along with two outbound wires of approximately $10,000.00 each to individuals in Russia. N.R. listed his employment status with Wells Fargo as gas station manager when he opened the account in or around August 2013.

e. Bank of America identified an account ending in 4273 on a cybercriminal online forum. The account was opened on or about October 26, 2015, in Virginia in the name of D.W. Shortly after the

account was opened there was a deposit of approximately $4,260.00 followed by a wire of approximately $4,400.00 to an individual in Russia at an Alpha Bank account ending in 5728. In or around November 2015, Bank of America account 4273 started to receive Pop Money[7] and PayPal account transfers from multiple institutions totaling approximately $10,519.00. Following each transaction, the funds were withdrawn from the account. Mukhamedzhanova's Bank of America account ending in 0864 also wired funds to the Alpha Bank account ending in 5728.

K. G.M.

47. Also recovered from the trash at 8004 Boca Grande Avenue on or about October 17, 2016, was a packing slip from an online order from a retailer, Sephora, which was placed by Mukhamedzhanova with a billing address of 17201 Collins Ave and shipped to 8004 Boca Grande Avenue. The receipt had the name G.M. written on it. G.M. is approximately 29 years old and was born in Russia. On or about August 17, 2016, G.M. was arrested and charged, case number 1608-006010, in Charlotte County, Florida, for criminal use of personal identification without a consent and grand theft property more than $300.00 but less than $5,000.00, State of Florida vs. G.M. (16001486F). Records from Western Union indicate N.R. sent at least two transactions to a G.M., approximately $120.00 on or about May 27, 2015,

[7] Pop Money is an online company that sends money from your bank account to anyone with an email or mobile phone.

and approximately $130.00 on or about June 3, 2015. At the time of arrest, G.M. had on him a debit card for Cloudbizsolutions LLC, a business with an address of 901 Eleuthera Street West, Mukhamedzhanova and N.R.'s previous address. G.M. told detectives that his current address, which is listed on the charging document, is 8003 Boca Grande Avenue, across the street from N.R. and Mukhamedzhanova's current address.

48. The investigation showed that on or about July 27, 2016, G.M. used victim C.S.'s identity to open a bank account ending in 4092 at a Regions Bank located at 2100 Forrest Nelson Boulevard, Port Charlotte, Florida. On or about the same date, G.M. also obtained a $4,000.00 line of credit using the stolen PII of victim C.S., a Georgia resident. When opening the account, G.M. provided the bank with a fake Colorado Driver's License that featured victim C.S.'s name, but G.M.'s photograph. Regions Bank provided investigators with a surveillance photograph from the account opening, which occurred inside the bank. One or more bank employees identified G.M. as the individual who opened the account and the line of credit using C.S.'s PII.

49. On or about August 8, 2016, C.S. called Regions Bank and indicated that one or more accounts had been opened using his stolen identity. Based upon this, Regions Bank notified CCSO.

50. At the time that G.M. applied for the Regions Bank account ending in 4092, he requested a debit card for the account. A bank employee told G.M. that G.M.

would have to return to the branch at a later time to pick up the debit card. On or about August 15, 2016, once the debit card was available, a bank employee notified G.M. via phone that G.M. could come into the branch and pick up the debit card. During that call, G.M. advised that he was in Miami but would come into the branch in a few days.

51. On or about August 17, 2016, G.M. returned to the Regions Bank branch located at 2100 Forrest Nelson Boulevard, Port Charlotte, Florida to obtain his debit card. He used the same fake Colorado driver's license in C.S.'s name to provide identification to the bank in order to pick up his debit card. One or more bank employees recognized the name on the driver's license as the individual who had notified the bank of fraud. The bank employees told G.M. that they would need to go into the vault to retrieve the debit card and asked him to wait. The bank employees then called the police. After retrieving the debit cards, one or more bank employees handed over the debit card associated with the account ending in 4092 to G.M. After G.M. left the bank, another customer reported to a branch employee that a man was seen throwing something into the trash can. Bank employees recovered from the trash can the Colorado driver's license in C.S.'s name. At that point, the police arrived and placed G.M. under arrest.

52. A review of records associated with the account ending in 4092 show that it was opened with a starting deposit of approximately $50 and no further activity occurred in the account. This is consistent with the scheme described above whereby

individuals from Eastern European countries are directed to open accounts and turn over control of these accounts to the coconspirators to await deposits of fraudulently obtained funds.

53. Investigators later learned that on or about June 6, 2016, electronic articles of organization for a Florida limited liability corporation (LLC) were filed for CLOUDBIZSOLUTIONS LLC. The address listed on the articles of organization was 901 Eleuthera Street W., Venice, FL 34285, the prior address of N.R. and Mukhamedzhanova. The registered agent's name listed on the document was victim C.S. Although a subpoena to the Florida Secretary of State for records is still outstanding, investigators have determined that these articles of incorporation were filed electronically.

54. Also on or about August 17, 2016, the date of G.M.'s arrest, employees of CCSO recovered a BB&T Bank debit card at the police building where G.M. was processed. Officers believe that G.M. dropped or discarded this debit card while inside the police building. The BB&T debit card featured victim C.S.'s name as well as the name CLOUDBIZSOLUTIONS LLC. Documents obtained from BB&T bank show that this debit card is associated with an account ending in 4864, which was opened on or about June 30, 2016, in the name of CLOUDBIZSOLUTIONS and listed C.S. as the signatory. This account was opened inside a BB&T branch located on Cochran Boulevard in Port Charlotte, Florida with a starting deposit of approximately $100. Bank surveillance video shows G.M. as the individual who

opened the account. On or about August 15, 2016, a deposit of approximately $8,400.00 was made, which consisted of three Bill Pay checks from a Citibank accout that were mailed to the BB&T branch located in Port Charlotte, FL. On or about August 16, 2016, an individual using an ATM in Miami Beach, Florida withdrew approximately $200 from the BB&T account ending in 4864. Shortly thereafter, BB&T froze the account. Citibank has reported that the account from which these three Bill Pay checks were issued had been subject to an online account take over and that the true account holder, an individual in Colorado, neither had knowledge of nor gave consent for these Bill Pay checks to be issued.

55. Based on bank surveillance photos, investigators also believe that G.M. opened an additional bank account using the stolen identity of victim S.B. On or about March 28, 2016, G.M. opened a bank account at BB&T Bank on Fruitville Road located in Sarasota, FL, using the stolen PII of S.B. Although investigators are still gathering documents related to this account, your affiant has learned that the address listed on the account opened using the stolen PII of victim S.B. was the same as that provided by G.M. to open the accounts using victim C.S.'s stolen PII at Regions and BB&T bank.

56. Investigators interviewed victim C.S. C.S. stated that he does not know G.M., he never registered the business CLOUDBIZSOLUTIONS LLC, he did not give G.M. permission to possess or use his PII to register a business, he did not give G.M. permission to possess or use his PII to open or conduct transactions through any

bank accounts, and he had no control over such accounts.

57. On G.M.'s person at the time of arrest was the Regions Bank debit card in the name of victim C.S., a Duracell 8GB external hard drive, and a HTC cell phone, serial number NM80PM9110.

58. On or about November 1, 2016, investigators obtained recorded jail calls made by G.M. while being held in Charlotte County, Florida. There were approximately 23 phone calls and four video calls. The four video calls appeared to include G.M., N.R., and Mukhamedzhanova. Of the approximately 23 phone calls placed by G.M., approximately 19 of them were placed to phone number (301) 828-7523, subscribed to by Mukhamedzhanova.

59. On the recordings, there are conversations with G.M., N.R., and Mukhamedzhanova about the possibility of A.P. paying to bail G.M. out of jail. Also during a call, N.R. told G.M. that A.P. had been calling N.R. frequently about G.M. because A.P. was very concerned that G.M. was going to talk to the police. G.M. told N.R. to tell A.P. that he had not told the police anything about their "work." Mukhamedzhanova told G.M. they had "warned everyone" about G.M.'s arrest. G.M. mentioned that he was concerned about the cell phone that the police took.

## CONCLUSION

60. Based on my training and experience, and the information provided in this Affidavit, there is probable cause to believe that on or about the dates set forth above,

within the Southern and Middle Districts of Florida, Linara Mukhamedzhanova did commit bank fraud in violation of Title 18, United States Code, Section 1344, and aggravated identity theft, in violation of Title 18, United States Code, Section 1028A. Your affiant respectfully requests the Court consider these facts and issue an arrest warrant for Linara Mukhamedzhanova.

Respectfully submitted,

Jason Failing, Special Agent
Internal Revenue Service – Criminal Investigation

Subscribed and sworn to before me on Nov ~~14~~ 15, 2016

The Honorable Mark A. Pizzo
United States Magistrate Judge